UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YUAN TIAN,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-3085-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Yuan Tian is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. She filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging her immigration detention as indefinite under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Dkt. 5 at 21-22. She also asserts Respondents failed to comply with federal regulations when they detained her on May 20, 2026, thereby violating her procedural due process rights. *Id.* at 22-23. She seeks release from custody and injunctive relief related to future redetention and third-country removal. *Id.* at 24-25.

Respondents filed a return (Dkt. 6), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (Dkt. 7) ("Hubbard

Decl.") and their counsel Lawrence Van Daley (Dkt. 8) ("Van Daley Decl."). Petitioner filed a traverse in reply (Dkt. 9).

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 5) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of China who was admitted into the United States on December 10, 2005 in Chicago, Illinois as a "nonimmigrant in transit." Hubbard Decl., ¶¶ 3-4. Officer Hubbard states that Petitioner was authorized to stay in the United States until January 8, 2026. *Id.* ¶ 4. This must be an error in Officer Hubbard's declaration because, as explained below, Petitioner was placed into removal proceedings in 2008 and was ultimately ordered removed to China in 2011.

On April 11, 2008, DHS served Petitioner with a Notice to Appear ("NTA"), charging her with being inadmissible under the Immigration and Nationality Act ("INA"). Hubbard Decl., ¶ 5. On September 30, 2011, an immigration judge granted Petitioner's request for voluntary departure which required Petitioner to leave the United States before November 29, 2011. *Id.* ¶ 6. *See* 8 U.S.C. § 1229c(b)(2). Voluntary departure required the posting of an immigration bond, which Petitioner posted on October 6, 2011. *Id.* ¶ 7. The order also converted to a removal order to China if Petitioner did not leave before the November 29, 2011, voluntary departure deadline. *Id.* ¶ 7. Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"). *Id.*

On September 9, 2013, the BIA dismissed Petitioner's petition for review with respect to withholding of removal and denied the remainder of the petition for review. *Id.* ¶ 8; *see* Van Daley Decl., ¶ 2, Ex. 2 at 2.

Petitioner filed a motion to reconsider the BIA's order, which was subsequently denied on December 24, 2013. Hubbard Decl., ¶¶ 9-10. Petitioner filed a petition for review with the Seventh Circuit Court of Appeals on January 22, 2014, which was denied on July 28, 2014. *Id.* ¶¶ 11-12. Petitioner's voluntary departure bond was cancelled on September 19, 2014. *Id.* ¶ 13.

Following the Seventh Circuit's denial of Petitioner's petition for review in 2014, the record is silent regarding any efforts by DHS to move forward with Petitioner's removal until the 2026 arrest that led to her instant detention at issue here. It appears from the record that Petitioner has remained free to live in the United States ever since her 2005 admission.

Petitioner asserts that while living in the United States, she attended college and worked as a nurse. Dkt. 5 at 5-6. She owns and operates two businesses, and she is the mother of two U.S. citizen children, ages 20 and 8. *Id.* at 6. Her older child has been forced to leave college to manage Petitioner's businesses during Petitioner's detention. *Id.*

On May 20, 2026, Petitioner was driving home when she was stopped by multiple ICE officers. *Id.* She was ordered to get out of her car. *Id.* Petitioner asserts she was told ICE had a warrant for her arrest, but they did not provide it to her when she requested. *Id.* Petitioner asserts she has yet to be informed of the basis for her detention. *Id.*

Officer Hubbard asserts that on May 20, 2026, Petitioner "came to the notice of Homeland Security Investigations ("HSI") during a human trafficking investigation." Hubbard Decl., ¶ 14. That same day and purportedly "knowing that Petitioner had a final order of removal, HSI encountered Petitioner, arrested her pursuant to an I-200 Warrant for Arrest of [Noncitizen], and turned her over to the custody of [ICE]." *Id.* Petitioner was transferred to the NWIPC, where she has remained detained since. *Id.*

On June 3, 2026, an Enforcement and Removal Operations ("ERO") officer submitted a travel document request to a "Detention and Deportation Officer" to prepare its submission to the "Headquarters of Removal and International Operations." *Id.* ¶ 15. On June 23, 2026, ERO contacted Petitioner's daughter to request assistance locating Petitioner's passport. *Id.* ¶ 16. Petitioner's daughter did not produce a passport. *Id.*

On August 17, 2026, ERO received confirmation that the National Immigration Administration in China verified Petitioner's nationality. *Id.* ¶ 18. Officer Hubbard asserts that the NIA "verified to ERO that physical travel documents have been submitted to the Chinese embassy." *Id.*

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner challenges her detention on two grounds. First, she asserts that her instant detention under 8 U.S.C. § 1231 has become effectively indefinite when assessed under the framework articulated in *Zadvydas*. Dkt. 5 at 21. She also challenges the lawfulness of her arrest and detention on procedural due process grounds, specifically when analyzed under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id.* at 22.

Respondents contend that Petitioner's current detention under § 1231 falls within the six-month presumptively reasonable period discussed in *Zadvydas*. Dkt. 6 at 7. Respondents also point to recent, and ongoing, efforts by ERO to obtain travel documents to secure Petitioner's removal to China. *Id.* at 8-9. According to Respondents, these facts demonstrate that Petitioner's removal to China is reasonably foreseeable. *Id.* at 9. As for Petitioner's redetention, Respondents assert that the regulations Petitioner contends were violated do not apply. *Id.*

**A. Petitioner is not entitled to relief under *Zadvydas*.**

Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *See id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* If the government is unable to meet its burden, then the noncitizen should be released. *Tuan Thai v. Ashcroft*, 366 F.3d 790, 794 (9th Cir. 2004).

Here, Petitioner's removal order became final when the BIA dismissed the appeal on December 24, 2013. *See* 8 C.F.R. § 1241.1(a). That triggered the 90-day removal period under 8 U.S.C. § 1231(a)(2), regardless of whether Petitioner was in custody. *See Gregorio Ordonez v. Bondi*, 2025 WL 3852444, at *6 (W.D. Wash. Dec. 19, 2025) (citing *Ulysse v. Dept. of Homeland Sec.*, 291 F. Supp. 2d 1318, 1325-26 (M.D. Fla. 2003)) ("[T]he removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody."). The 90-day removal period thus lapsed on March 24, 2014. *See Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) ("The standard removal period should have ended on September 23, 2003—90 days after Diouf's order of removal became final."). The record does not reflect that Petitioner was detained during the 90-day removal period. Respondents do not indicate whether DHS sought to mandatorily detain Petitioner after the BIA dismissed Petitioner's appeal, which rendered her removal order administratively final. *See generally* Dkt. 6.

Today, as the parties acknowledge, the only post-final-order detention authority available to authorize Petitioner's detention appears to be § 1231(a)(6). Dkt. 5 at 8; Dkt. 6 at 3. It appears undisputed that Petitioner's only period of detention pursuant to the final order is her current detention because she was granted voluntary departure and remained out of custody after the final order was signed in 2013. At the time of this Court's order, the length of Petitioner's detention is a little over four months.

Petitioner argues the "six-month presumptively reasonable period runs unabated once Petitioner's removal order becomes final, and does not run solely during any period when Petitioner was detained." Dkt. 5 at 9 (citing *Tran v. Bondi*, C25-1897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025)). In other words, Petitioner appears to assert there is no

statutory authority for her detention. *Tran* involved aggregated periods of detention and it is not entirely clear how the court calculated the time spent in detention or how long the petitioner was detained. *See* 2025 WL 3140462, at *3 (finding petitioner "was ordered removed *in absentia* in June 2007 . . . and then held in ICE custody until November 30, 2009"); *see id*. at *1 (finding petitioner was detained on August 21, 2025 and "in custody ever since"). While periods of detention need not be consecutive, *see Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026), this Court is not aware of any Western District case that has found the entire six-month presumptively reasonable period can expire without the petitioner serving any period of detention at all, and Petitioner cites none. *Zadvydas* is, after all, a case limiting the INA's "post-removal-period *detention* to a period reasonably necessary to bring about [the noncitizen's] removal from the United States." 533 U.S. at 682 (emphasis added).

Petitioner also contends that her detention need not exceed six months to first assert a claim under *Zadvydas*. Dkt. 9 at 3 (citing *Uprety v. Bondi*, 2026 WL 194227 (W.D. Wash. Jan. 26, 2026)). In *Uprety*, the only case cited by Petitioner, the court was "unpersuaded" that "the six month period in *Zadvydas* "reflect[ed] the earliest moment at which a noncitizen's detention could raise constitutional issues[.]" 2026 WL 194227, at *3. The Court observes, however, that the petitioner in *Uprety* filed his habeas petition on the day his detention hit six months. 2026 WL 194227, at *2.

Here, Petitioner's detention falls far short of that six-month period. Further, the record reflects that Respondents have pursued efforts to obtain travel documents for Petitioner as recently as last month with the latest update indicating "physical travel documents have been submitted to the Chinese embassy." Hubbard Decl., ¶ 18. While it would be more helpful to have a better sense of when Respondents anticipate travel documents to issue, given the current

length of detention, the Court does not find the length of Petitioner's detention has become presumptively unreasonable. Nor does the Court find that Petitioner has met her burden to show that her removal to China is not significantly likely to occur in the reasonably foreseeable future. Accordingly, Petitioner's claim for relief under § 1231(a)(6) and *Zadvydas* is DENIED without prejudice.

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As noted, Petitioner also challenges the lack of process provided leading up to her redetention. Dkt. 5 at 22-23. Respondents only respond to Petitioner's due process claim in the context of injunctive relief. *See* Dkt. 6 at 9-10.

As for the first factor, Petitioner had a weighty liberty interest in remaining free. A noncitizen released into the community acquires a liberty interest in remaining free, the

termination of which "inflicts a grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Even those *conditionally* released obtain a liberty interest in remaining released from custody. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Following entry of the final order of removal, Petitioner remained unconditionally released for well over a decade, where she established significant ties to the community, raised her children, and ran her businesses. There is no evidence Respondents sought Petitioner's detention or took efforts to advance her removal to China. And there is no evidence Respondents were unable to do so. Courts have found that such a knowing decision by the government to not detain an individual creates a liberty interest in their remaining freedom. *See, e.g., Tello Vazquez v. Mullin*, C26-2039-KKE, 2026 WL 1911507, at *2, (W.D. Wash. July 2, 2026) ("The Government could have detained [p]etitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after [p]etitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community."). The first *Mathews* factor weighs in Petitioner's favor.

As for the second Mathews factor, the Court finds there was a high risk of erroneous deprivation and value in additional safeguards. As noted above, the 90-day removal period has run. Under 8 U.S.C. § 1231(a)(3), noncitizens who are not removed within the removal period "shall be subject to supervision under regulations prescribed by the Attorney General." However, there is no evidence DHS set conditions of release or supervised Petitioner. Instead, on this record, it appears Respondents allowed Petitioner to remain unconditionally free for nearly thirteen years until "Petitioner came to the attention of Homeland Security

Investigations."[1] Van Daley Decl., ¶ 2, Ex. 3. To then revoke that freedom, without first providing any notice or opportunity to challenge the basis for the redetention, came with a high risk of error. The second factor also weighs in Petitioner's favor.

Finally, the Government certainly has an interest in enforcing immigration laws, ensuring noncitizens appear for proceedings, protecting the public, and prompt execution of removal orders, *see Demore v. Kim*, 538 U.S. 510, 518 (2003), but its interest in doing so without first providing pre-deprivation process was low. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Here, Respondents do not offer any evidence that Petitioner posed a risk of flight or danger to the community, such that providing pre-deprivation process would have been arguably impracticable.

Although Petitioner is subject to a final order of removal and Respondents are now taking steps to secure travel documents, Respondents offer no legitimate governmental interest in detaining Petitioner while they do so. This is not, for example, a situation where the government has travel documents in hand and removal is otherwise imminent. In *Zadvydas*, the Supreme Court identified reducing danger to the community and risk of flight as the two primary goals served by civil immigration detention. 533 U.S. at 690. Neither of those goals appear to be implicated by Petitioner's individual circumstances. The final factor weighs in Petitioner's favor.

[1] DHS administrative records indicate Petitioner was identified as the "principal member" of a "possible human trafficking operation[]." Van Daley Decl., ¶ 2, Ex. 3 at 4. This fact appears to have been the motivating force behind Petitioner's arrest, *see id.*, but is not mentioned by Respondents in their return. *See generally* Dkt. 6. The record is otherwise silent regarding Petitioner's involvement in this purported operation.

Respondents have the authority to take the steps necessary to detain Petitioner and effectuate her removal. But on the current record, Petitioner's arrest and redetention without first providing notice and an opportunity to be heard was constitutionally deficient. *See Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

**C. Injunctive Relief**

Petitioner seeks injunctive relief regarding future redetention, third-country removal, and GPS monitoring. Dkt. 5 at 24-26. She seeks to enjoin Respondents from redetaining her in the future without first holding a hearing before a neutral decisionmaker. She also seeks to shift the burden, and raise the standard, of proof to a "clear and convincing" standard borne by the government. *Id.* As for her possible third-country removal, Petitioner seeks to enjoin Respondents from removing her, or seeking to remove her, to a third country without first providing notice and an opportunity to respond in reopened removal proceedings. She also seeks to prohibit her removal to any third country where she is "likely to face imprisonment or other punishment upon arrival." *Id.*

Petitioner's requests for injunctive relief are largely generalized citations to other cases within the District that have ordered similar relief, together with conclusory assertions that Petitioner faces similar risk. Nor does Petitioner point to any instance within this District involving a subsequent unlawful redetention occurring after habeas relief was granted. Thus, Petitioner has not demonstrated a cognizable risk of recurrent harm. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

Further, there is limited factual development showing Petitioner faces third-country removal other than Petitioner's generalized concern. Respondents contend DHS is only pursuing removal to China, and the record reflects Respondents are in the process of obtaining travel documents to China. Dkt. 6 at 10; Hubbard Decl., ¶¶ 15-18. Like Petitioner's request related to her future redetention, the Court finds the record too undeveloped to find Petitioner faces a risk of unlawful third-country removal requiring a court order. Her request is therefore DENIED without prejudice. Nothing prevents Petitioner from seeking relief in the future should she deem it necessary.

Finally, Petitioner cites an exhibit from the docket of *G-T- v. McShane*, C25-5788-KSM (E.D. Penn. Nov. 7, 2025), which purports to demonstrate Respondents' increased frequency in imposing GPS monitoring on habeas petitioners released from custody. Dkt. 5 at 20. Petitioner does not provide that exhibit for the Court's review or otherwise explain how it demonstrates she runs the risk of unlawful GPS monitoring upon release. Her request is accordingly DENIED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition (Dkt. 5) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on reasonable conditions of release that comply with federal law. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's claim under § 1231(a)(6) and *Zadvydas* is DENIED without prejudice. Petitioner's requests for injunctive relief are DENIED without prejudice. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

//

Dated this 29th day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge